# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11** |
| **MERVYN'S HOLDINGS, LLC, <u>et al.</u>,**[1] | **Case No. 08-11586 (KG)** |
| Debtors. | **Jointly Administered** |
| | |
| **WM INLAND ADJACENT, LLC,** a California limited partnership, Cross-Complainant, | **Adv. Proc. No. 09-50920 (KG)** |
| v. | |
| **Mervyn's LLC, a California limited liability company, and DOES 1 through 20, inclusive** Cross-Defendants. | Re: Docket No. 30 |

## OPENING BRIEF OF THE CROSS-DEFENDANT
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

MORGAN, LEWIS & BOCKIUS LLP
919 Third Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to the Cross-Defendants*

Dated: September 14, 2012

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Mervyn's Holdings, LLC (3405), Mervyn's LLC (4456) and Mervyn's Brands, LLC (8850).

# TABLE OF CONTENTS

                                                                                **Page**

I.      Introduction...................................................................................................1

II.     Facts and Agreed Process ...............................................................................2

III.    Legal Argument ...............................................................................................3

        A.      Legal Standard for Summary Judgment ...................................................3

        B.      WM Inland's Claims are Pre-Petition Claims ...........................................4

        C.      Even if the Claims Arose Post-Petition, they are Not Entitled to
                Administrative Status.............................................................................10

IV.     Conclusion ....................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

In re ANC Rental Corp., Inc.,
    341 B.R. 178 (Bankr. D. Del. 2006) ...................................................................6, 7, 10

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)........................................................................................................4

Avellino & Bienes v. M. Frenville Co. (Matter of M. Frenville Co.),
    744 F.2d 332 (3d Cir. 1984)......................................................................................7, 10

In re Broadstripe, LLC,
    444 B.R. 51 (Bankr. D. Del. Sept. 2, 2010) ...............................................................3, 4

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)........................................................................................................3

D'Orsay Int'l Partners v. Sup. Ct. of Los Angeles Cty.,
    123 Cal. App 4th 836 (Cal. Ct. App. 2004) ..................................................................9

In re G-I Holdings, Inc.,
    308 B.R. 196 (Bankr. D. N.J. 2004) ..............................................................................6

Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.),
    607 F.3d 114 (3d. Cir. 2010)...........................................................................6, 7, 8, 10

Knight v. U.S. Fire Ins. Co.,
    804 F.2d 9 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) ....................................3

Matsushita Electronic Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)........................................................................................................4

In re Mid-American Waste Systems,
    228 B.R. 816 (Bankr. D. Del. 1999) ........................................................................6, 11

In re Penn. Truck Lines, Inc.,
    189 B.R. 331 (Bankr. E.D. Pa. 1995) ...........................................................................6

In re Pinnacle Brands, Inc.,
    259 B.R. 46 (Bankr. D. Del. 2001) ..............................................................6, 10, 11, 12

Reading Co. v. City of Philadelphia,
    155 B.R. 890 (E.D.Pa. 1993) ........................................................................................6

ii

In re Rodriguez,
    629 F.3d 136 (3d Cir. 2010)............................................................................8

In re Summit Metals, Inc.,
    379 B.R. 40 (Bankr. D. Del. 2007) ...........................................................6, 11

Tipton v. Bergrohr GMBH-Siegen,
    965 F.2d 994 (11th Cir. 1992) .....................................................................3

In re Unidigital, Inc.,
    262 B.R. 283 (Bankr. D. Del. 2001) ...........................................................5

In re W.R. Grace & Co.,
    2012 U.S. Dist. LEXIS 80461 (D. Del. June 11, 2012)..................................8, 9, 10

Wright v. Owens Corning,
    679 F.3d 101 (3d Cir. 2012)............................................................................8

**STATUTES & RULES**

11 U.S.C. §101(5)..........................................................................................4, 7

11 U.S.C. § 365(g).......................................................................................1, 5, 9

11 U.S.C. § 502(e)(2)........................................................................................5

Fed. R. Bankr. P. 7056.........................................................................................3

Fed. R. Bankr. P. 7056(c) ....................................................................................3

Fed. R. Civ. P. 1..................................................................................................3

Fed. R. Civ. P. 56(c) ........................................................................................3, 4

Fed. R. Civ. P. 56(e) ...........................................................................................4

**OTHER AUTHORITIES**

3-365 Collier on Bankruptcy ¶ 365.10 (16th ed 2012) ...................................5

RLF1 7056660v.1

## I.    Introduction

1.    Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, debtor/cross-defendant Mervyn's LLC ("Mervyn's" or "Cross-Defendant", and together with its affiliates as debtors and debtors-in-possession in the above captioned cases, the "Debtors"), hereby submits this memorandum of points and authorities, in support of its Motion for Summary Judgment with respect to the priority of the claims asserted by Cross-Complainant WM Inland Adjacent, LLC ("WM Inland") in the above-captioned adversary proceeding.

2.    As set forth in the *Joint Statement of Stipulated Material Facts and Issue for Cross-Motions for Summary Judgment* (the "Statement of Facts") filed contemporaneously herewith, this Adversary Proceeding arises from claims (collectively, the "Claims") asserted by WM Inland, as landlord, for damages it allegedly incurred in connection with the rejection by Mervyn's of that certain lease (as further described in the Statement of Facts, the "Lease") relating to the non-residential premises located at 500 Inland Center Drive, San Bernardino, California (the "Premises"). It is undisputed that WM Inland's Claims arose under the Lease, a pre-petition agreement. In addition, the Debtors believe WM Inland's Claims relate solely to construction work done on the Premises that was performed by Fisher Development Inc. ("Fisher Development"), as subcontractor, prior to the Petition Date in the Debtors' chapter 11 cases.[2] It is similarly undisputed that the Lease was rejected by the Debtors and that all contractual obligations imposed on the Debtors for indemnification, contribution, reimbursement (or to bond or remove any mechanics' liens) are found solely in the rejected Lease and thus must be general unsecured rejection claims, as a matter of law, pursuant to 11 U.S.C. § 365(g). Accordingly, the

---

[2] Defined terms used herein without definition shall have the meanings assigned thereto in the Statement of Facts.

1

Cross-Defendant hereby moves for summary judgment, and seeks a determination that the Claims, to the extent allowed, are Claims that arose prior to the Petition Date, and are entitled to such priority only as general pre-petition claims under the Bankruptcy Code.

## II.    Facts and Agreed Process

4.    The parties have agreed upon the material facts relevant to this dispute. Accordingly, the Court is respectfully referred to the Statement of Facts filed contemporaneously herewith, for a statement of the relevant facts. Due to the narrow issue before the Court, the parties have agreed to file on the date hereof cross-motions for summary judgment, together with opening briefs, solely with respect to the priority of the Claims. The parties have agreed to file cross-responsive briefs contemporaneously on October 5, 2012, with a hearing for oral argument to follow should this Court deem necessary.[3]

5.    The Debtors respectfully submit that the key undisputed facts dispositive of the priority of the Claims are as follows:

(a)    The sole contractual bases for the Claims are various provisions contained in the Lease.[4]

(b)    Each and every one of such contractual provisions relied on by WM Inland were negotiated and agreed to by the parties prior to the Petition Date, and the Lease was drafted and executed prior to the Petition Date.

(c)    The Lease was rejected as of November 21, 2008.

(d)    The Lease was never assumed.

---

[3] Should this Court determine that any of the Claims are entitled to administrative priority, the parties reserve their rights with respect to any factual disputes as to the proper calculation and amount of such Claims. The parties have previously agreed that such Claims, if any, may only be allowed in an amount up to a maximum cap of $1.775 million. Statement of Facts at ¶27. However, the actual amount remains in dispute and is not the subject of either cross-motion currently before this Court.

[4] For example, WM Inland, as landlord, asserts that Debtors, as tenant, contractually agreed in the prepetition Lease to, among other things, bond and/or remove mechanic's liens placed on the Premises, and to indemnify and/or reimburse WM Inland for any damages and costs (including legal fees) incurred by the landlord relating to any mechanic's liens.

2

(e)    The Debtors never opened nor operated a retail store at the Premises. Therefore, the Debtors' estates never generated any income or revenue from the Premises and the Debtors' estates received no post-petition benefit from the asserted Claims.

6.    Finally, the Debtors believe all of the work performed by the subcontractor to the Premises occurred pre-petition, and that no work was requested to be performed (and none was performed) post-petition.

## III.    Legal Argument

### A. *Legal Standard for Summary Judgment*

7.    Fed. R. Civ. P. 56(c) provides that summary judgment "shall be rendered forthwith" if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See also Fed. R. Bankr. P. 7056. Summary judgment is designed "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

8.    Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c); Celotex, 477 U.S. at 322; Tipton, 965 F.2d at 998; Knight, 804 F.2d at 11; In re Broadstripe, LLC, 444 B.R. 51, 76 (Bankr. D. Del. Sept. 2, 2010) (Summary judgment is "designed to avoid trial . . . if [the] facts are settled and dispute turns on [an] issue of law").

9.    Once the moving party has satisfied its burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading" and must come forward

3

with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party may not rely on speculation, conjecture, conclusory allegations or mere denials to raise a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electronic Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"); In re Broadstripe, LLC, 444 B.R. at 77.

10.    Summary judgment is appropriate for the narrow issue before the Court.  Since the parties have agreed upon the relevant facts, there are no genuine issues of material fact requiring the Court's determination.  The sole issue currently before this Court – the priority to be granted to the Claims under Sections 365, 502 and 503 of the Bankruptcy Code – is purely a matter of law.

*B.  WM Inland's Claims are Pre-Petition Claims*

11.    The Bankruptcy Code broadly defines a "claim" as a:

(A)  right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B)  right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. §101(5).  As of the petition date in the Debtors' bankruptcy cases, WM Inland held a "claim" pursuant to the extremely broad definition in Section 101(5) for any potential breaches, violations, damages or obligations of the Debtors under the Lease – even if such claims may have been contingent, unliquidated and/or unmatured as of the Petition Date.

4

12.     Moreover, the Bankruptcy Code treats all claims for damages arising under rejected pre-petition executory contracts and unexpired leases as pre-petition claims:

> [Except in instances where the debtor is the lessor,] the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease –
>
> (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, *immediately before the date of the filing of the petition* . . .

11 U.S.C. §365(g) (emphasis added).

13.     Similarly, Section 502(g) of the Bankruptcy Code dictates that any claim arising from the rejection of an executory contract or unexpired lease under Section 365 "shall be allowed . . . or disallowed . . . the same as if such claim had arisen before the date of filing of the petition." See also In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001) (noting that the rejection of a lease creates a pre-petition breach by operation of Bankruptcy Code Section 502(g))

14.     Consequently, as a matter of law, the rejection of an unassumed, unexpired pre-petition lease constitutes a pre-petition breach of such lease, and all claims arising thereunder – including any lease obligations to indemnify, reimburse, pay legal fees, and to bond or remove mechanic's liens – must be treated as pre-petition general unsecured claims: "a claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed . . . or disallowed . . . *the same as if such claim became fixed before the filing of the petition*." 11 U.S.C. § 502(e)(2) (emphasis added). See also 3-365 Collier on Bankruptcy ¶ 365.10 (16th ed. 2012) ("By placing the time of the breach prepetition, section 365(g) makes any claim that the contract or lease counterparty may have a prepetition claim not entitled to priority as an expense of administration of the estate.").

5

15.     Consistent with the mandate of the Bankruptcy Code, courts in this Circuit have held that contingent or unmatured claims arising under rejected pre-petition executory contracts and unexpired leases are general pre-petition claims, even where such claims may have matured or become fixed post-petition.  See, e.g., In re Summit Metals, Inc., 379 B.R. 40, 56 (Bankr. D. Del. 2007) (stating that "consistently, courts have held that an indemnification claim based upon pre-petition services or conduct is not a cost or expense for 'services rendered after the commencement of a case'"); In re ANC Rental Corp., Inc., 341 B.R. 178 (Bankr. D. Del. 2006) (denying claimant's post-petition administrative claim because indemnity obligation arose when pre-petition car rental agreement was executed); In re G-I Holdings, Inc., 308 B.R. 196 (Bankr. D. N.J. 2004) (concluding that claim for contractual indemnity or contribution under pre-petition clean up agreement was not entitled to administrative priority); In re Pinnacle Brands, Inc., 259 B.R. 46 (Bankr. D. Del. 2001) ("Pinnacle Brands") (holding that creditor's indemnification claim was a general unsecured prepetition claim, notwithstanding the fact that claim was premised on separate pre-petition contractual and post-petition common law theories); In re Mid-American Waste Systems, 228 B.R. 816 (Bankr. D. Del. 1999) (disallowing administrative priority to indemnity claim asserted by officers and directors pursuant to prepetition certificate of incorporation); In re Penn. Truck Lines, Inc., 189 B.R. 331 (Bankr. E.D. Pa. 1995) (finding claimant's indemnity claim, which was based upon pre-petition agreement, to be a contingent, pre-petition general unsecured claim that could not be accorded administrative claim status); Reading Co. v. City of Philadelphia, 155 B.R. 890 (E.D.Pa. 1993) (holding that city's contractual indemnification claim against debtor railroad was a contingent pre-petition claim).

16.     The Third Circuit also accords pre-petition general unsecured status to common law and statutory claims relating to a debtor's pre-petition conduct.  In Jeld-Wen, Inc. v. Van

6

Brunt (In re Grossman's, Inc.), 607 F.3d 114 (3d. Cir. 2010) ("Grossman's"), the Third Circuit laid to rest any question as to the priority of non-contractual claims that mature or become fixed post-petition.  In Grossman's, the Court expressly held that common law and statutory claims arise when the exposure to a product or other conduct giving rise to the injury occurs, not when the injury manifests.  See Grossman's, 607 F.3d at 125.  In so holding, the Third Circuit expressly overruled the long-criticized Avellino & Bienes v. M. Frenville Co. (Matter of M. Frenville Co.), 744 F.2d 332 (3d Cir. 1984) ("Frenville"), which had held that non-contractual claims arise when the right to payment arises under state law (and accordingly, that the common law contribution claims asserted in that case were deemed to have arisen post-petition). Frenville, 744 F.2d at 337.  In the Grossman's opinion, the Third Circuit agreed with other courts that the Frenville decision, in focusing on the "right to payment" language in Section 101(5) of the Bankruptcy Code, "fail[ed] to give sufficient weight to the words modifying it: 'contingent,' 'unmatured,' and 'unliquidated.'  The accrual test in Frenville does not account for the fact that a 'claim' can exist under the Code before a right to payment exists under state law." Grossman's, 607 F.3d at 121.

17.    It is worth nothing that even the Frenville opinion agreed with the long-recognized proposition discussed above that claims arising under pre-petition contracts must be treated as pre-petition claims.  See Frenville, 744 F.2d at 336 ("When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement."); see also In re ANC Rental Corporation, 341 B.R. 178, 180 (Bankr. D. Del. 2006) (recognizing the Frenville distinction).  There is no indication to the contrary in Grossman's.  To hold otherwise would contradict the principles underlying the Bankruptcy Code and discussed in the Grossman's

7

opinion. See Grossman's, 607 F.3d at 121 (noting legislative history stating that the definition of "claim" should have the "broadest possible definition" and Supreme Court precedent noting that the term has the "broadest available definition") (internal citations omitted). Further, the Third Circuit and courts sitting within the Circuit have subsequently held that the Grossman's holding is intended to apply broadly. See, e.g., Wright v. Owens Corning, 679 F.3d 101, 107 (3d Cir. 2012) (finding that claimant's product liability claims arose pre-petition, and expressly extending Grossman's to hold that "a claim arises when an individual is exposed *pre-confirmation* to a product or other conduct giving rise to an injury that underlies a 'right to payment' under the Code") (emphasis in original); In re Rodriguez, 629 F.3d 136 (3d Cir. 2010) (mortgage lender had a pre-petition claim with respect to the Debtors' underfunded mortgage escrow; accordingly, the automatic stay prevented the lender from increasing the Debtors' monthly mortgage payments post-petition to recoup unpaid pre-petition escrow amounts).

18.    Most recently, the District Court for this District expressly held that contingent indemnity and contribution rights asserted against the Debtors by the State of Montana and Canada in connection with pending "duty to warn" and similar litigation, which remained contingent upon the confirmation of the Debtors' plan of reorganization, were pre-petition claims under Grossman's. See In re W.R. Grace & Co., 2012 U.S. Dist. LEXIS 80461, *164-65 (D. Del. June 11, 2012), amending 468 B.R. 81 (D. Del. 2012), motion for reconsideration denied 2012 U.S. Dist. LEXIS 88887 (D. Del. June 27, 2012). In so determining, the District Court found that the Third Circuit intended for Grossman's to apply broadly:

> Montana would have this Court find that the holding of Grossman's only applies to direct tort claims under Grace's Joint Plan. However, at no point in its Opinion did the Third Circuit exempt indemnity and contribution claims in Chapter 11 reorganization plans from the holding of Grossman's. To do so, in fact, would have been contra to the broad definition that Congress intended for §101(5)(A) to have under the Code.

8

In re W.R. Grace & Co., 2012 U.S. Dist. LEXIS 80461, 165 (D. Del. June 11, 2012)

19.    Thus, under applicable Third Circuit precedent, there is no question that each of the landlord's Claims asserted in the Cross-Complaint, to the extent allowable, is a pre-petition general unsecured claim.  For example, Count I is a claim for breach of contract arising from the filing by Fisher Development of the First Lien and the Second Lien (together, the "Mechanics Liens").  Cross-Complaint at ¶ 10.  It is undisputed that the "contract" allegedly breached by the Debtors is the pre-petition Lease, and the Debtors believe the underlying conduct complained of (i.e., having work performed on the Premises without payment) occurred entirely pre-petition. Regardless of when the asserted breach occurred, the "claim" relating to such breach existed (as a contingent, unliquidated claim) as of the petition date.[5]  Further, since the Lease has been rejected, all of the landlord's claims for any contractual breaches and related rejection damages must be accorded pre-petition status pursuant to Section 365(g).

20.    The same analysis applies to Count II, which asserts WM Inland's contractual right to indemnification under the Lease.  Cross-Complaint at ¶ 18.  Assuming that WM Inland has an indemnifiable claim under the Lease, it is of no import that the claim was liquidated or matured post-petition.  The date that WM Inland incurred its legal fees defending the Fisher Development lawsuit (or the date it made a cash payment to Fisher Development under the Settlement Agreement) is irrelevant.  As previously discussed, Mervyn's contractual obligation to indemnify WM Inland for all such costs arose on the date the parties entered into the Lease;

---

[5]  Pre-petition status is required, notwithstanding the post-petition recording by Fisher Development of the Mechanics Liens. Pursuant to California law, a mechanics lien is deemed to arise when work begins, not when the lien is filed or executed.  See Cal Civ Code § 3110 (repealed July 1, 2012), § 8400 (effective July 1, 2012); D'Orsay Int'l Partners v. Sup. Ct. of Los Angeles Cty., 123 Cal. App 4th 836, 844 (Cal. Ct. App. 2004) (noting that a mechanic's lien attaches when there is "actual visible work on the land or the delivery of constructions materials thereto").  Accordingly, Fisher Development's lien arose pre-petition as a matter of California law.

accordingly, it is a pre-petition obligation. See, e.g., In re ANC Rental Corp., Inc., 341 B.R. 178 (Bankr. D. Del. 2006); In re Pinnacle Brands, Inc., 259 B.R. 46 (Bankr. D. Del. 2001).

21.     Count III of the Cross-Complaint asserts a claim for equitable indemnity, in the event the Court determines that WM Inland is not entitled to contractual indemnification under the Lease. Cross-Complaint at 22. However, even prior to the Grossman's opinion overruling Frenville, this Court previously declined to extend Frenville to apply where a claimant asserted both a pre-petition contractual indemnification claim and a post-petition common law indemnification claim. See Pinnacle Brands, 259 B.R. at 51. Rather, the Bankruptcy Court determined that "[a] claim which is premised on theories that could be asserted in both a pre-petition and post-petition suit is nonetheless a pre-petition claim." Id. Accordingly, the common law indemnity Claim asserted in Count III would not be accorded post-petition status even under the pre-Grossman's law – and certainly would not be an administrative claim under Grossman's and its progeny, the common law right to indemnity asserted in Count III, if allowed, must still be treated as a pre-petition claim. See Grossman's, 607 F.3d 114 (3d. Cir. 2010); In re W.R. Grace & Co., 2012 U.S. Dist. LEXIS 80461 (D. Del. June 11, 2012). Finally, since (a) the Debtors never opened or operated the store at the Premises, and never obtained any income or revenue from such store, and (b) the landlord likely received at least some benefit for the improvements made to its Premises, there is nothing "inequitable" here.

C.  *Even if the Claims Arose Post-Petition, they are Not Entitled to Administrative Status*

22.     Pursuant to Section 503 of the Bankruptcy Code, the Court may only allow as administrative expenses "the actual, necessary costs and expenses of preserving the estate . . ." Determination of whether a claim is entitled to administrative status requires application of a two-prong test:  (i) the expense must have arisen from a post-petition transaction between the

10

creditor and the debtor-in-possession and (ii) the transaction must have substantially benefitted the estate. See, e.g., Pinnacle Brands, 259 B.R. at 51; In re Mid-American Waste Systems, 228 BR. at 821.

23.    Here, the sole transaction between WM Inland and the Debtors which gives rise to the Claims was the signing of the pre-petition Lease.  There was no post-petition contract or transaction between the Debtors and WM Inland.[6]  Further, the Debtors believe that Fisher Development, as subcontractor, completed all work giving rise to the Mechanic's Liens prior to the Petition Date, and did no additional work for the Debtors following the Petition Date.  Joint Statement of Facts at ¶ 12.  Thus, Fisher Development's claims against both the Debtors and WM Inland for nonpayment of its construction work were entirely pre-petition in nature.  See, e.g., In re Summit Metals, Inc., 379 B.R. 40 (Bankr. D. Del. 2007) (indemnification claim arising from pre-petition conduct rather than a post-petition transaction with the Debtor was not entitled to administrative expense priority); In re Mid-American Waste Systems, 228 B.R. at 822 (directors' and officers' indemnification claims related entirely to pre-petition conduct and were not administrative in nature).

24.    WM Inland's post-petition "transactions" with Fisher Development are irrelevant as a matter of law.  Fisher Development may, in fact, have filed a post-petition (a) Mechanic's Lien on the landlord's fee interest in the Premises and (b) a lawsuit against the landlord.  And the landlord may have incurred costs, damages and legal fees arising from Fisher Development's actions. But neither of these events are transactions with the Debtors.  Administrative expense

---

[6] It is undisputed that the Debtors never even opened the store which was contemplated to be located at the Premises, paid no post-petition rent, did not use or operate the store or conduct any retail business or retail operations from the Premises, and rejected the Lease for the vacant store.

RLF1 7056660v.1

status cannot be granted here since WM Inland cannot meet its burden of proving any post-petition transaction between WM Inland and the Debtors which gives rise to the Claims.

      25.     Even if WM Inland could satisfy the first prong of the test, it cannot show that the incurred expenses and damages suffered conferred a substantial benefit on the Debtors' estates. By paying Fisher Development pursuant to the Settlement Agreement, WM Inland simply satisfied a per-petition claim that Fisher Development held against the Debtors.  As the Bankruptcy Court noted in Pinnacle Brands, "[t]his is not conferring a substantial benefit on the estate but is merely substituting one pre-petition creditor for another." Pinnacle Brands, 259 B.R. at 52.  The underlying substance of the settlement between Fisher Development and WM Inland is nothing more than WM Inland purchasing Fisher Development's pre-petition general unsecured claim.  WM Inland now merely stands in the shoes of Fisher Development vis à vis the Debtors.  A post-petition assignment of a pre-petition claim simply does not transform the priority of the underlying claim to post-petition status.  The Debtors are still being asked to pay for the same pre-petition construction work on the Premises – with WM Inland now being substituted for Fisher Development as the party seeking to be paid for the pre-petition construction work.  Only the name of the holder of the Claim has changed (and the payment request is now called "indemnification" rather than "money owed for services and materials"). This mere substitution of the claim holder is not relevant, as a matter of law, to the priority of the claim and does not confer any "benefit" to the estate under the applicable legal test.  Therefore, the asserted Claims, if allowed, are entitled only to priority as a general pre-petition claim.

12

## IV.    Conclusion

For the reasons stated herein, Mervyn's respectfully requests the Court to grant it

summary judgment with respect to the limited issue before the Court, and hold that, as a matter

of law, the Claims arose pre-petition, and are entitled solely to the status of general unsecured

pre-petition claims under the Bankruptcy Code.


Dated: September 14, 2012                 Respectfully submitted,
       Wilmington, Delaware

                                          _____
                                          Mark D. Collins (No. 2981)
                                          Daniel J. DeFranceschi (No. 2732)
                                          Christopher M. Samis (No. 4909)
                                          RICHARDS, LAYTON & FINGER, P.A.
                                          920 North King Street
                                          Wilmington, Delaware 19801
                                          Telephone:  (302) 651-7700
                                          Facsimile:  (302) 651-7701

                                          – and –

                                          Neil E. Herman
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          919 Third Avenue
                                          New York, New York 10178
                                          Telephone:  (212) 309-6000
                                          Facsimile:  (212) 309-6001

                                          *Attorneys for the Cross-Defendants*