UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MERVYN'S HOLDINGS, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-11586 (KG)<br><br>Jointly Administered |
| WM INLAND ADJACENT, LLC,<br>a California limited partnership,<br><br>Cross-Complainant,<br><br>v.<br><br>Mervyn's LLC, a California limited liability company, and DOES 1 through 20, inclusive,<br><br>Cross-Defendants. | Adv. Proc. No. 09-50920 (KG) |

## REPLY BRIEF OF THE CROSS-DEFENDANTS TO MOTION OF INLAND ADJACENT LLC TO DETERMINE ADMINISTRATIVE PRIORITY FOR LEASE INDEMNITY CLAIM UNDER 11 U.S.C. § 365(D)(3)

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
*Counsel to the Cross-Defendants*

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Mervyn's Holdings, LLC (3405), Mervyn's LLC (4456) and Mervyn's Brands, LLC (8850).

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | **Preliminary Statement** | 1 |
| II. | **Reply** | 2 |
| A. | Under Third Circuit Precedent, the Indemnity Claims are Pre-Petition General Unsecured Claims | 2 |
| B. | WM Inland's Claims would not Qualify for Administrative Expense Status Even if Section 365(d)(3) Applied to Indemnity Claims | 3 |
| C. | The Claims Do Not Otherwise Qualify for Treatment as Administrative Expense Claims | 6 |
| III. | **Conclusion** | 8 |

i

# TABLE OF AUTHORITIES

Page

## CASES

*In re ANC Rental Corp., Inc.*,
    341 B.R. 178 (Bankr. D. Del. 2006) .................................................................................3

*Avellino & Bienes v. M. Frenville Co. (Matter of M. Frenville Co.)*,
    744 F.2d 332 (3d Cir. 1984) ...................................................................................2, 3, 6

*Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*,
    268 F.3d 205 (3d Cir. 2001) ............................................................................... *passim*

*In re Garden Ridge Corp.*,
    323 B.R. 136 (Bankr. D. Del. 2005) .................................................................................4

*In re Goody's Family Clothing Inc.*,
    610 F.3d 812 (3d Cir. 2010) .............................................................................................7

*G-I Holdings, Inc.*,
    308 B.R. 196 (Bankr. D. N.J. 2004) .................................................................................3

*In the Matter of Handy Andy Home Improvement Centers, Inc.*,
    144 F.3d 1125 (7th Cir. 1998) ......................................................................................4, 7

*In Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.)*,
    607 F.3d 114 (3d. Cir. 2010) .......................................................................................2, 6

*Montgomery Ward, LLC v. Western Land Props. (In re Montgomery Ward, LLC)*,
    302 B.R. 478 (D. Del. 2003) ............................................................................................4

*In re Mid-American Waste Systems*,
    228 B.R. 816 (Bankr. D. Del. 1999) .................................................................................3

*In re Penn. Truck Lines, Inc.*,
    189 B.R. 331 (Bankr. E.D. Pa. 1995) ...............................................................................3

*In re Pinnacle Brands, Inc.*,
    259 B.R. 46 (Bankr. D. Del. 2001) ...................................................................................3

*Reading Co. v. City of Philadelphia*,
    155 B.R. 890 (E.D. Pa. 1993) ...........................................................................................3

*In re Summit Metals, Inc.*,
    379 B.R. 40 (Bankr. D. Del. 2007) ...................................................................................3

*In re W.R. Grace & Co.*,
    2012 U.S. Dist. LEXIS 80461 (D. Del. June 11, 2012) ...................................................3

# TABLE OF AUTHORITIES

**Page**

## STATUTES AND REGULATIONS

11 U.S.C. § 365(d)(3) ............................................................................................... *passim*

11 U.S.C. § 503(b) ..................................................................................................... 6, 7

## I. Preliminary Statement

1. The Motion of WM Inland Adjacent LLC ("WM Inland") for Summary Judgment to Determine Administrative Priority for Lease Indemnity Claim Under 11 U.S.C. § 365(D)(3) (the "Cross-Motion") sets forth a tortured reading of Third Circuit law that would turn applicable precedent on its head.[2] Despite clear Third Circuit case law directly on point addressing the treatment of indemnification claims in bankruptcy, WM Inland does not cite a single case on indemnification. Instead, WM Inland relies solely on an obviously distinguishable case addressing real estate taxes. The Cross-Motion is merely an attempt to elevate what is clearly a pre-petition indemnification claim to administrative expense status. To endorse such an assertion would undermine the unambiguous Third Circuit jurisprudence that *directly addresses* the treatment of contractual and common law indemnification claims in bankruptcy.

2. Second, even if this Court were to accept the WM Inland's interpretation of Bankruptcy Code Section 365(d)(3), the undisputed facts of this case still do not support a finding that the Claims are entitled to administrative status, since WM Inland did not settle the claim with Fisher Development – and thus had no liquidated claim to assert against the Debtors – until after the Lease had been rejected. See Appendix to Cross-Motion.

3. Finally, to recognize the Claim as anything other than a pre-petition general unsecured claim would set a dangerous policy precedent pursuant to which claimants could easily elevate their interests simply by agreeing to wait until after an anticipated bankruptcy filing to assert their rights under applicable law. It is undisputed that Fisher Development's claims against the Debtors arose entirely pre-petition. WM Inland has merely stepped into Fisher Development's shoes, and should not be able to accomplish indirectly what Fisher Development

---

[2] Capitalized terms used herein without definition shall have the meanings assigned to them in the Opening Brief of the Cross-Defendant in Support of Motion for Summary Judgment (the "Opening Brief").

clearly would not be permitted to do directly under any interpretation of the Bankruptcy Code. To the extent they are allowed, the Claims should be treated as pre-petition general unsecured claims.

## II. Reply

### A. *Under Third Circuit Precedent, the Indemnity Claims are Pre-Petition General Unsecured Claims*

4.  WM Inland goes to great lengths to analogize the Claims to the post-petition tax bills that were the subject of the Third Circuit's holding in Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205 (3d Cir. 2001) ("Montgomery Ward"). WM Inland's pained analysis of Montgomery Ward, which is discussed in further detail below, is undermined by a single key point: the Cross-Motion does not (and cannot) cite a single precedential decision applying Montgomery Ward and its progeny to a lease indemnification claim. In fact, no court sitting within the Third Circuit has determined that a landlord's indemnification right arising under a pre-petition contract or lease is entitled to consideration under Section 365(d)(3) of the Bankruptcy Code. In short, there are two separate and distinct lines of cases in the Third Circuit: one dealing specifically with rent and real estate taxes (not applicable here) and a second line dealing specifically with indemnity claims (on point here). Incredibly, WM Inland wholly ignores the extensive line of indemnity cases directly on point.

5.  As discussed in detail in the Debtors' Opening Brief, courts in this Circuit, both pre- and post-Frenville, have uniformly held that a debtor's indemnification obligations arising under a pre-petition unexpired lease or executory contract (or from the Debtors' pre-petition conduct) must be treated as pre-petition claims. See, e.g., Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.), 607 F.3d 114 (3d Cir. 2010); Avellino & Bienes v. M. Frenville Co. (Matter

2

of M. Frenville Co.), 744 F.2d 332 (3d Cir. 1984); In re W.R. Grace & Co., 2012 U.S. Dist. LEXIS 80461 (D. Del. June 11, 2012); Reading Co. v. City of Philadelphia, 155 B.R. 890 (E.D. Pa. 1993); In re Summit Metals, Inc., 379 B.R. 40 (Bankr. D. Del. 2007); In re ANC Rental Corp., Inc., 341 B.R. 178 (Bankr. D. Del. 2006); In re G-I Holdings, Inc., 308 B.R. 196 (Bankr. D. N.J. 2004); In re Mid-American Waste Systems, 228 B.R. 816 (Bankr. D. Del. 1999); In re Penn. Truck Lines, Inc., 189 B.R. 331 (Bankr. E.D. Pa. 1995).  Courts in this District have also expressly held that common law claims for indemnification cannot be used as a springboard to elevate pre-petition claims to administrative expense status.  See In re Pinnacle Brands, Inc., 259 B.R. 46 (Bankr. D. Del. 2001).  None of these cases used a "billing" theory analysis for indemnity claims.

6.     Thus, WM Inland's attempt to apply Montgomery Ward's real estate tax holding to the indemnity issue here is without merit since it ignores an entire line of Third Circuit cases directly on point and such cases mandate treatment of the indemnity Claims as pre-petition general unsecured claims.

**B.    *WM Inland's Claims would not Qualify for Administrative Expense Status Even if Section 365(d)(3) Applied to Indemnity Claims***

7.     In Montgomery Ward, the Third Circuit addressed the treatment in bankruptcy of real estate taxes on leased premises coming due post-petition under a lease that had been neither assumed nor rejected.  See Montgomery Ward, 268 F.3d at 206.  The Third Circuit determined that the so-called "billing theory" applies to real estate taxes, such that a bill coming due post-petition (but prior to rejection) is payable as an administrative expense, regardless of whether all or some portion of the bill relates to a pre-petition obligation.[3]  See id. at 212.  In Montgomery

---

[3] Conversely, courts applying the "accrual" or "proration" test under Section 365(d)(3) will prorate monthly rent-related obligations such that the portion attributable to the post-petition period will be treated as an administrative

3

Ward, unlike here, the tenant's tax bill obligation clearly became due and payable during the post-petition, pre-rejection period. Unlike here, in Montgomery Ward there was a specific liquidated real estate tax amount due and payable on a specific post-petition/pre-rejection date. Id. at 207. Similarly, subsequent cases applying Montgomery Ward include (i) claims for liquidated amounts and (ii) identifiable payment dates. See, e.g., Montgomery Ward, LLC v. Western Land Props. (In re Montgomery Ward, LLC), 302 B.R. 478 (D. Del. 2003) (applying billing date approach to real estate taxes and insurance premiums) In re Garden Ridge Corp., 323 B.R. 136 (Bankr. D. Del. 2005) (holding that tax bills coming due post-petition were administrative in nature).

8. WM Inland cannot force the undisputed facts at issue here to fit within the limited holding of Montgomery Ward. WM Inland asserts that under the Lease, the indemnification obligation was triggered by the mere filing of the Mechanic's Liens and the filing by Fisher Development of its lawsuit against WM Inland. Cross-Motion at 10-11. The legislative history underlying Section 365(d)(3) addresses the importance of post-petition, pre-rejection performance by debtor tenants "at the time required in the lease." See, e.g., Montgomery Ward, 268 F.3d at 210-11 (quoting remarks of Sen. Hatch). Any indemnity obligation of the Debtors existing under the Lease during the post-petition, pre-rejection period was still speculative, unmatured, contingent and unliquidated. Because Fisher Development and WM Inland did not reach a resolution of the Fisher claims (either consensually or at trial) until 90 days *after* the lease was rejected, the "billing date" did not occur during the post-petition, pre-rejection period. The Fisher Development/WM Inland settlement – and any concomitant indemnification or payment obligation arising therefrom – occurred *after* the November 21, 2008 rejection of the

---

expense, regardless of the date such payment became due. See, e.g., In the Matter of Handy Andy Home Improvement Centers, Inc., 144 F.3d 1125 (7th Cir. 1998) ("Handy Andy").

4

Lease. Put simply, there was no indemnification obligation actually <u>payable</u> during the applicable period. Even under <u>Montgomery Ward</u>, if one analogizes the indemnity provisions to a tax "bill" or an "obligation" here to indemnify the landlord, such bill or obligation did not become liquidated or "due" or payable until after the lease was rejected.

9. It is undisputed that:

 (i) the contractual indemnification in the lease between WM Inland and Debtors was signed pre-petition;

 (ii) the contract between Fisher Development and the Debtors for construction work was signed in January 2008 (pre-petition); Fisher Development's entire proof of claim relates solely to pre-petition work by Fisher Development; and none of the Fisher Development work for which indemnification is sought was performed post-petition;

 (iii) the lease was rejected on November 21, 2008 – which was three months <u>before</u> WM Inland and Fisher Development liquidated the indemnity claim by entering into their settlement;

 (iv) all four of Fisher Development's Mechanic's Liens were filed <u>before</u> the alleged "Commencement Date" and effectiveness of the lease term (which WM Inland asserts did not occur until October 29, 2008). <u>See Cross-Motion</u> at 11 ("However, the Term for the Lease itself began and the obligations of Mervyn's to pay Base Rent and additional rent arose post-petition (October 29, 2008)");

 (v) Fisher Development's lawsuit against WM Inland was filed <u>before</u> the alleged Term and the Commencement Date of the Lease assertedly began on October 29, 2008;

 (vi) under applicable California law, nothing prevented Fisher Development from filing its Mechanic's Liens or lawsuit pre-petition and it was mere happenstance (or perhaps negligence or gamesmanship) which led to the post-petition filings; and

 (vii) Mervyn's obligation to pay Fisher for its pre-petition services was incurred and "due" and payable prior to the petition.

It is axiomatic that Fisher's direct claim against the Debtors for the pre-petition services is a general unsecured claim – and the filing of a post-petition lawsuit or mechanic's lien does not change such priority. Since WM Inland is merely standing in Fisher's shoes (and seeking to collect the exact same underlying claim for unpaid pre-petition work asserted by Fisher), it is impossible to see how WM Inland could possibly obtain an administrative claim under Sections

5

365(d)(3) or 503(b) based on these facts. The <u>Montgomery Ward</u> decision certainly does not support the proposition that Fisher's general unsecured claim can magically be transfigured into an administrative claim merely because the <u>holder</u> of the claim has changed or because WM Inland now calls the claim an "indemnity" claim instead of a claim for pre-petition services rendered.

10.  Contrary to WM Inland's assertion, the Section 365(d)(3) obligation under the Lease could <u>not</u> have been triggered when Fisher filed its proofs of claim or its lawsuit since these events occurred at a time when the Term and Commencement Date of the Lease had not yet occurred. Moreover, Debtors vigorously dispute WM Inland's factual assertion that the Commencement Date occurred on October 29, 2008 and this is not a stipulated fact (and thus cannot be a basis to grant summary judgment to WM Inland). In addition, even if WM Inland was correct on the Commencement Date, the automatic stay would prohibit any pre-petition "springing" guaranty or indemnity from first coming into existence, post-petition, on October 29, 2008.

### C. *The Claims Do Not Otherwise Qualify for Treatment as Administrative Expense Claims*

11.  Not only would WM Inland's tortured reading of <u>Montgomery Ward</u> render the entire <u>Frenville/Grossman's</u> line of cases moot, it would encourage gamesmanship among pre-petition unsecured creditors, contrary to the policies of good faith, fair dealing and equal treatment among similarly situated creditors, all of which are fundamental to the Bankruptcy Code. Any time a party had a claim under a pre-petition contract for contribution or indemnity against a putative debtor, it could elevate its claim to administrative status simply by conspiring with a third-party plaintiff, hedging its bets and waiting for an anticipated bankruptcy filing. Alternatively, the claim priority would change due to intentional, accidental or negligent delay

by the primary plaintiff in filing its claim to trigger the indemnity. This Court should not countenance such bad public policy.[4]

12. Absent the applicability of Section 365(d)(3), WM Inland's only other basis for asserting an administrative expense claim is under Bankruptcy Code Section 503(b). See, e.g., In re Goody's Family Clothing Inc., 610 F.3d 812 (3d Cir. 2010) (holding that Bankruptcy Code Section 365(d)(3) does not exclude a landlord from seeking allowance of an administrative expense claim under Section 503(b)). As discussed in detail in the Opening Brief, WM Inland cannot show that the Claims were "actual, necessary costs and expenses of preserving" the Debtors' estates. See 11 U.S.C. 503(b); see Opening Brief at 10-12. Indeed, the Cross-Motion does not seek allowance of the Claims under Section 503(b). See generally Cross-Motion.

13. Ultimately, the Cross-Motion fails to make any showing that the Claims are entitled to administrative expense status under any applicable provision of the Bankruptcy Code. As a matter of law, the asserted Claims, if allowed, are entitled only to priority as pre-petition general unsecured claims.

---

[4] Similarly, it is clear that Section 365(d)(3) was intended to cover the inequities arising where a landlord is compelled to provide use, occupancy and services to a debtor without current payment. See e.g., Montgomery Ward, 268 F.3d at 210-11 (Section 365(d)(3) was aimed at providing landlords with current pay for current services); Handy Andy, 144 F.3d at 1127. Here, the Debtors never used nor occupied the store, never opened for business and received no services at the premises from the landlord, thus there is no "current pay for current use and services" argument or "inequity" to remedy under Section 365(d)(3) here.

### III. Conclusion

For the reasons stated herein and in the Opening Brief, Mervyn's respectfully requests the Court to grant it summary judgment with respect to the limited issue before the Court, and hold that, as a matter of law, the Claims arose pre-petition, and are entitled solely to the status of general unsecured pre-petition claims under the Bankruptcy Code, and to deny WM Inland's Cross-Motion.

Dated: October 5, 2012
Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
Julie A. Finocchiaro (No. 5303)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Neil E. Herman
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Attorneys for the Cross-Defendants*