IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re ) | | Chapter 11 |
| ) | | |
| MERVYN'S HOLDINGS, LLC, et al., ) | | Case No. 08-11586 (KG) |
| ) | | |
| Debtors. ) | | |
| ) | | |
| WM INLAND ADJACENT LLC, ) | | |
| a California limited partnership, ) | | |
| Cross-Complainant, ) | | Adv. Pro. No. 09-50920 (KG) |
| ) | | |
| v. ) | | |
| ) | | |
| MERVYN'S LLC, a California limited ) | | |
| liability company, and DOES 1 through ) | | |
| 20, inclusive, ) | | |
| Cross-Defendants. ) | | |
| ) | | **Re: Dkt. Nos. 29 & 30** |

## MEMORANDUM OPINION

This interesting dispute comes before the Court on the cross-motions for summary judgment of WM Inland Adjacent LLC ("WM Inland") and Mervyn's Holdings, LLC, Mervyn's LLC, and Mervyn's Brands, LLC (collectively, "the Debtors"), and presents a matter of first impression.[1] The issue before the Court is whether WM Inland's claim arising from an indemnification provision in a nonresidential commercial lease with Mervyn's LLC ("Mervyn's"), which Debtors rejected post-petition, is entitled to administrative priority under 11 U.S.C. § 365(d)(3), or is a pre-petition, general

---

[1] The matter comes before the Court on the Motion of WM Inland Adjacent for Summary Judgment to Determine Administrative Priority for Lease Indemnity Claim under 11 U.S.C. § 365(d)(3), and the Brief of WM Inland Adjacent LLC in Response to Cross-Defendants Opening Brief and in Further Support of Motion for Summary Judgment to Determine Administrative Priority for Lease Indemnity Claim under 11 U.S.C. § 365(d)(3) (together, the "Summary Judgment Motion"); and the Debtors' Cross-Motion for Summary Judgment, and the Reply Brief of the Cross-Defendants to Motion of Inland Adjacent LLC to Determine Administrative Priority for Lease Indemnity Claim under 11 U.S.C. § 365(d)(3) (together, the "Cross-Motion for Summary Judgment").  (Doc. Nos. 29, 31, 33, 34).

unsecured claim under 11 U.S.C. § 502(g). Upon review of the pleadings, including the Stipulated Facts defined below, and following a hearing on October 15, 2012, the Court finds WM Inland's claim arising from the Debtors' indemnification obligation under the lease is entitled to administrative priority under 11 U.S.C. § 365(d)(3). The Court therefore, GRANTS the Summary Judgment Motion of WM Inland, and DENIES the Debtors' Cross-Motion for Summary Judgment.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

On January 8, 2008, the Debtors executed a lease on a commercial property in San Bernardino, California (the "Premises") owned by WM Inland.[2] This controversy involves the Debtors' liability under indemnification provisions contained in both the nonresidential real property lease (the "Lease"), and the construction agreement related to prospective property improvements to the Premises, included as Exhibit C to the Lease (the "Construction Agreement").

### *The Indemnification Obligations*

The Lease and Construction Agreement require Mervyn's to indemnify WM Inland for various liabilities occurring prior to, during and after the term of the Lease. These indemnification obligations include a duty to keep the premises free of mechanics' liens, and pay WM Inland as additional rent all amounts and charges due under the Lease, including attorneys' fees (the

---

[2] The Debtors and WM Inland submitted a *Joint Statement of Stipulated Material Facts and Issues for Cross-Motions for Summary Judgment* (the "Stipulated Facts" or "SF"). (Doc. No. 32).

"Indemnification Obligations").[3] The Lease provides that Mervyn's is liable to WM Inland for "any lien or claim which may be alleged to have arisen out of work performed under this lease by Tenant."[4] The Construction Agreement was integrated as part of the Lease both by the terms of the Lease and the Construction Agreement, and similarly requires Mervyn's to indemnify WM Inland for any mechanics' or materialmens' liens filed against the Premises.[5]

*Delivery of the Premises and the Effective Date of the Lease*

Although not material to the outcome of this case, the only disputed fact is the effective date of the Lease. WM Inland contends the effective date of the Lease is October 29, 2008. WM Inland contends it notified Mervyn's of its intent to deliver possession of the Premises by a letter dated January 22, 2008 (the "Notice Letter").[6] WM Inland further contends, by letter to Mervyn's dated January 31, 2008 (the "Delivery Letter"), WM Inland delivered possession of the Premises to Mervyn's effective as of February 2, 2008.[7] Based on this possession date, and if the Notice Letter and Delivery Letter were delivered as asserted by WM Inland, then the commencement date for the term of the Lease was October 29, 2008.[8] The Debtors contend they have no record of receiving

---

[3] *See* the *Lease* at §§ 2.06 (requiring Mervyn's to pay liabilities incurred by WM Inland as additional rent); 13.02(a)(v) ("any liability which may be asserted against Landlord with respect thereto . . ."); 13.02(e) ("[these] provisions . . . shall survive the Expiration Date or earlier termination hereof with respect to any liability, suit, obligation, fine, damage, penalty, claim, cost, charge or expense arising out of or in connection with any matter which is the subject of indemnification under this Article 13"); 16.08 (establishing liability for attorneys fees); 26 (establishing liability for titles and covenants).

[4] *Lease* at § 13.02(a).

[5] *Lease* at § 1.01; *Exhibit C to the Lease* at ¶¶ 1, 10 ("This Construction Agreement . . . is attached as an exhibit to and forms a part of the Lease . . .").

[6] (SF, ¶ 3).

[7] (SF, ¶ 4).

[8] (SF, ¶ 5).

3

either the Notice Letter or the Delivery Letter, and dispute that the effective date ever occurred.[9] However, WM Inland has copies of Federal Express invoices reflecting receipt of both letters, and Mervyn's both took possession of the Premises on February 2, 2008, and paid WM Inland over $50,000.00 in post-petition, pre-rejection rent.[10]

### *Property Improvements and Fisher Development Inc.*

On January 28, 2008, Mervyn's entered into a contract with Fisher Development Inc. ("Fisher") to provide labor and materials for building improvements to the Premises for an agreed initial sum of $6,039,010.[11] The agreement between Mervyn's and Fisher provided that construction would commence on March 3, 2008, with substantial completion by July 18, 2008, and final completion by August 9, 2008.[12] Fisher served WM Inland with notice of this arrangement on February 11, 2008.[13] Fisher began work as scheduled, and Mervyn's made several progress payments to Fisher: (1) $249,000 on April 8, 2008; (2) $627,000 on May 1, 2008; (3) $1,020,000 on May 23, 2008; (4) $1,200,000 on July 9, 2008; and (5) $976,000 on July 28, 2008.[14] Prior to the filing of the Debtors' chapter 11 cases, the improvements to the property were approximately 90% complete.[15]

---

[9] (SF, ¶ 10).

[10] (SF, ¶¶ 4, 21).

[11] (SF, ¶ 6).

[12] (SF, ¶ 6).

[13] (SF, ¶ 6).

[14] The progress payments are approximated. (SF, ¶ 8).

[15] (SF, ¶ 8).

### *The Debtors' Chapter 11 Cases and Fisher's Mechanics' Liens*

On July 29, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[16] As of the Petition Date, Fisher stopped all work on the Premises.[17] The Debtors listed Fisher as a creditor holding an unsecured, non-priority claim in the amount of $965,953.00.[18] On September 9, 2008, Fisher recorded a mechanics' lien against the Premises for approximately $1.7 million with the San Bernardino County (California) Registrar-Recorder as Document No. 2008-0409910 (the "First Lien").[19] On October 3, 2008, Fisher recorded a second mechanics' lien through the same process for an additional $3.8 million as Document No. 2008-0445300 (the "Second Lien").[20]

On October 8, 2008, Fisher filed suit against WM Inland in San Bernardino County Superior Court to foreclose on the First and Second Liens.[21] On November 21, 2008, WM Inland answered Fisher's complaint and cross-complained against Mervyn's pursuant to Mervyn's Indemnification Obligations under the Lease for breach of contract, express indemnity, equitable indemnity and declaratory relief.[22] Both the complaint filed by Fisher and the cross-complaint filed by WM Inland

---

[16] (SF, ¶ 10).

[17] (SF, ¶ 12).

[18] (SF, ¶ 11). On January 7, 2009, Fisher filed a proof of claim in the Debtors' Chapter 11 Cases for $1,811,593.42, on account of amounts due and owing from the Debtors for labor, services, equipment and materials arising from the construction contract, including interest. (Claim No. 3553). On June 15, 2011, the Court subsequently disallowed and expunged Fisher's claim in the *Order (CORRECTIVE) Granting Debtors Fifty-First Omnibus Objection (Substantive) to Certain Overstated Claims and Motion to Reduce or Disallow and Expunge Such Claims*. Case No. 08-11586 (KG) (Doc. No. 5968).

[19] (SF, ¶ 13).

[20] (SF, ¶ 14).

[21] (SF, ¶ 15).

[22] (SF, ¶ 16).

were removed to the United States Bankruptcy Court for the Central District of California.[23] Subsequently, the complaint filed by Fisher was severed and remanded to the San Bernardino County Superior Court, while the cross-complaint filed by WM Inland was transferred to this Court and became the instant adversary proceeding.[24]

On April 9, 2009, the Court entered the *Order, Pursuant to Sections 105 and 365 of the Bankruptcy Code Approving the Rejection of Debtor's Unexpired Lease of Nonresidential Real Property at San Bernardino, CA*, under which the Debtors rejected the Lease, effective November 21, 2008.[25] On July 28, 2009, this Court entered an *Order Granting Stipulation re: Limited Relief from Automatic Stay Order* staying the instant adversary proceeding pending resolution of the complaint filed by Fisher in the California court.[26] In February 2010, Fisher and WM Inland entered into a confidential settlement agreement, with WM Inland paying Fisher $1,755,000, including attorneys' fees and costs.[27]

The Debtors and WM Inland agree that as of the date Debtors rejected the Lease: (1) the improvements to the Premises had not been completed; (2) the Debtors had not opened a retail store at the Premises to the general public; (3) the Debtors had not sold merchandise or otherwise derived income or revenue from the sale of goods at the store located at the Premises; and (4) therefore, under Section 9(b) of Exhibit C to the lease, WM Inland was not required to purchase the building

---

[23] (SF, ¶ 17).

[24] (Doc. No. 1).

[25] Case No. 08-11586(KG) (Doc. No. 3234)

[26] (Doc. Nos. 2, 8).

[27] (SF, ¶ 20).

improvements to the Premises from the Debtors.[28] If the conditions of Section 9(b) of Exhibit C to the Lease had been met, WM Inland would have been obligated to purchase the building improvements for approximately $7,150,000.[29]

### *WM Inland's Claims Against the Debtors*

WM Inland filed two claims (together, the "WM Inland Claims") in the Debtors' Chapter 11 Cases: (1) proof of claim number 5082, filed on January 9, 2009, for $10,106,839.71, comprised of: (a) a general unsecured claim for $3,239,604 of rejection damages, and (b) an administrative post-petition priority claim for $6,867,235.71 (including attorney's fees and interest); and (2) proof of claim number 6491, filed on February 18, 2009, for $7,234,694.16, consisting of mechanics' liens of approximately $6.77 million; rent and property taxes of $282,318.29); and attorney's fees in the sum of $57,473.93.

The Debtors objected to the WM Inland Claims on the grounds they were overstated and/or misclassified, and sought expungement.[30] Without conceding the issue of the priority of the WM Inland Claims generally, WM Inland seeks administrative priority treatment under 11 U.S.C. § 365(d)(3) for claims arising from the Indemnification Obligations of up to $1,755,000.00 for the amounts WM Inland paid to settle the Fisher litigation (the "Indemnification Obligations Claim").[31]

---

[28] (SF, ¶ 23).

[29] (SF, ¶ 23).

[30] *Debtors' Fourth Omnibus Objection to Claims (Substantive) and Motion to Reclassify or Disallow Such Claims* Case No. 08-11586 (KG) (Doc. No. 3599); and *Debtors' Fifty-Fourth Omnibus Objection (Substantive) to Certain Overstated and/or Misclassified Claims and Motion to (I) Reduce and/or Reclassify or (II) Disallow and Expunge Such Claims* Case No. 08-11586(KG) (Doc. No. 6075). These objections remain pending.

[31] (SF, ¶ 28). The parties have agreed that the claims relating to the Indemnification Obligations are subject to a maximum cap of $1,755,000; however, the actual amount remains in dispute and is not the subject of either cross-motion before the Court.

In contrast, the Debtors seek a determination that the Indemnification Obligations Claim is entitled to priority only as pre-petition, general unsecured claim under section 502(g) of the Bankruptcy Code.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Where there are cross-motions for summary judgment, each motion must be considered separately, and both motions will be denied if any genuine issues of material fact exist. *Adria Intern. Group, Inc. v. Ferre Development, Inc.*, 241 F.3d 103, 107 (1st Cir. 2001); *Tie Communications, Inc. v. Nynex Corp.*, 154 B.R. 182, 183-84 (Bankr. D. Del. 1992). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "when reasonable minds could disagree on the result." *Delta Mills, Inc. v. GMAC Comm. Fin., Inc. (In re Delta Mills, Inc .)*, 404 B.R. 95, 105 (Bankr. D. Del. 2009). The moving party bears the burden of demonstrating an entitlement to summary judgment. *McAnaney v. Astoria Fin. Corp.*, 665 F.Supp. 2d 132, 141 (E.D.N.Y. 2009).

Summary judgment serves to "isolate and dispose of factually unsupported claims or defenses" and avoid unnecessary trial where the facts are settled. *Delta Mills*, 404 B.R. at 104 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Thus, at the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Celotex*, 477 U.S at 317; *see also* Fed.R.Civ.P. 56(c). In making this determination, the Court must view all facts in the light most favorable to the

non-movant and must draw all reasonable inferences from the underlying facts in favor of the non-movant. *McAnaney*, 665 F.Supp. 2d at 141; *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). Any doubt must also be construed in the non-moving party's favor. *Delta Mills*, 404 B.R. at 105.

Once the moving party provides sufficient evidence, the burden shifts to the non-moving party to rebut the evidence. *Delta Mills*, 404 B.R. at 105. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *McAnaney*, 665 F.Supp.2d at 141 (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)). "[T]he mere existence of some alleged factual dispute between the parties" cannot defeat a properly supported summary judgment motion. *Anderson*, 477 U.S. at 247–48. The dispute must relate to a genuine issue of material fact. *Delta Mills*, 404 B.R. at 105. Thus, a non-moving party cannot defeat a summary judgment motion based on conclusory allegations and denials, but instead must provide supportive arguments or facts that show the necessity of a trial. *McAnaney*, 665 F.Supp.2d at 141. Summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the Court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Summary judgement is appropriate in the instant case because the parties agree and the Court finds that there are no material issues of fact. The only factual discord, the effective date of the Lease, is not determinative to this dispute because the broad language of the Indemnification Obligations requires the Debtors to indemnify WM Inland before, during, and after the term of the Lease. Therefore, the dispute regarding the Indemnification Obligations Claim is ripe for adjudication on a summary judgment basis regarding its priority under the Bankruptcy Code.

**DISCUSSION**

WM Inland asserts that under 11 U.S.C. § 365(d)(3) and the language of the Lease, the Indemnification Obligations Claim arose post-petition and prior to rejection of the Lease; therefore, the claim is entitled to administrative priority. WM Inland points to *Centerpoint Properties v. Montgomery Ward Holding Corp.*, 268 F.3d 205, 211 (3d Cir. 2001) ("Montgomery Ward") where the Court of Appeals for the Third Circuit held that section 365(d)(3) of the Code requires a debtor under a nonresidential real property lease to timely perform all obligations that arise after an order for relief is entered and before the lease is rejected.[32] In adopting the "billing date" approach, the Court of Appeals further stated "[t]he clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. To be consistent with this intent, any interpretation must look to the terms of the lease to determine both the nature of the 'obligation' and when it 'arises.'" *Id.* at 209.

In citing *Montgomery Ward*, WM Inland contends that the "billing date" for the Indemnification Obligations Claim was either in September 2008, when the First and Second Liens were recorded; or October 2008, when Fisher sued WM Inland to foreclose on the mechanics' liens. With either date, the Indemnification Obligations arose after the Petition Date (July 2008) and before the effective date of the rejection of the Lease (November 2008). Thus, WM Inland argues the Indemnification Obligations Claim is entitled to administrative priority under section 365(d)(3) of the Bankruptcy Code.

---

[32] "The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3)

The Debtors' assert that the Indemnification Obligations Claim arose pre-petition because (1) the Indemnification Obligations Claim arose from the rejection of the lease; or (2) the "billing date" derives from property improvements to the Premises occurring pre-petition. The Debtors argue that under either scenario, WM Inland's claim is entitled to general, unsecured priority under section 502(g) of the Code. Regarding the first scenario, section 502(g) provides that any claim arising from the rejection of an executory contract or unexpired lease under section 365 "shall be allowed . . . or disallowed . . . the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(g). However, the damages giving rise to the Indemnification Obligations Claim did not stem from the rejection of the Lease. Rather, the damages arose from the filing of mechanics' liens against the Premises, a matter entirely separate from the rejection of the Lease.

Regarding the second scenario, the Debtors cite to the holding of the Court of Appeals for the Third Circuit in *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.)*, 607 F.3d 114, 125-26 (3d Cir. 2010), finding that common law and statutory claims arise when the conduct giving rise to the injury occurs, rather than when the injury manifests. Under *Grossman's*, the Debtors contend the Indemnification Obligations Claim arose when Mervyn's and WM Inland entered into the Lease and Construction Agreement on January 8, 2008, and derive from pre-petition improvements to the Premises by Fisher, both "billing dates" prior to the Petition Date. Thus, the Indemnification Obligations Claim is entitled to pre-petition, general unsecured priority under section 502(g) of the Bankruptcy Code.

However, the Debtors assertion that Mervyn's contractual obligation to indemnify WM Inland arose pre-petition runs counter to the holding in *Montgomery Ward*. The language of section 365(d)(3) refers to an "obligation," which is "something one is legally required to perform under the terms of the lease . . . and such an obligation arises when one becomes legally obligated to perform."

*Montgomery Ward*, 268 F.3d at 209.  In the context of section 365(d)(3), the Court of Appeals for the Third Circuit noted the importance of post-petition, pre-rejection performance by debtor tenants "at the time required in the lease." *Id.* at 210-11 (quoting remarks of Senator Hatch regarding the legislative history behind section 365(d)(3)).  In *Montgomery Ward*, the debtor was required to pay real property taxes under a nonresidential real property lease to the landlord post-petition on an administrative basis, even though the time period relating to the taxes was pre-petition. *Id.* at 207.

Using the same rationale, once Fisher's recorded the First and Second Liens against the Premises (September 2008) and WM Inland was sued by Fisher (October 2008), the terms of the Lease dictate that Mervyn's was obligated to indemnify WM Inland.  Therefore, although the conduct giving rise to the Indemnification Obligations arose pre-petition, the associated Indemnification Obligations Claim arose after the Petition Date in July 2008 and before the effective date of the Lease's rejection in November 2008, entitling it to administrative priority under section 365(d)(3).

The Debtors also assert that *Montgomery Ward* is inapposite because (1) the indemnity obligation was speculative, unmatured, contingent and unliquidated until *after* the Lease was rejected in November 2008; and (2) there is no precedential decision applying *Montgomery Ward* to a lease indemnification claim.  *See, e.g.*, *In re Grossman's Inc.*, 607 F.3d at 121.  First, the Debtors posit that *Montgomery Ward* does not apply because the mere filing of the mechanics' liens and institution of the lawsuit, which occurred post-petition and pre-rejection, did not trigger the Indemnification Obligations.  Rather, the "billing date" did not occur until approximately 90 days after rejection of the Lease when WM Inland and Fisher reached a resolution regarding the value of the Fisher's claims.  *See, e.g.*, *Montgomery Ward, LLC v. Western Land Props., (In re Montgomery Ward, LLC)*, 302 B.R. 478, 481 (D. Del. 2003); *In re Garden Ridge Corp.*, 323 B.R. 136, 141 (Bankr. D. Del.

2005).

The Court disagrees. In the context of section 365(d)(3), the relevant time is when an "obligation" arises, which is different from when a "claim" arises. The Court of Appeals for the Third Circuit distinguished a "claim," which is an "unmatured right to payment," from an "obligation," which is "something one is legally required to perform under the terms of the lease." *Montgomery Ward*, 268 F.3d at 209-210. While the Lease and conduct giving rise to the Indemnification Obligations Claim took place pre-petition, the actual "billing date," or obligation, arose when Fisher filed its mechanics' liens and it sued to foreclose upon them. Therefore, the Indemnification Obligations Claim arose post-petition and pre-rejection under section 365(d)(3) as in *Montgomery Ward.*

Second, the Debtors argue that *Montgomery Ward* is not applicable to this dispute because its analysis has never been applied to indemnification obligations deriving from nonresidential real property leases. In further support of this construction, the Debtors cite a number of cases holding that claims arising from indemnification obligations in executory contracts qualify as pre-petition unsecured claims under section 502(g) of the Bankruptcy Code.[33]

The cases cited by the Debtors are not helpful in resolving the issue before the Court because none involved nonresidential real property leases and interpretations of section 365(d)(3). *See*

---

[33] The Debtors point to a host of inapposite cases, including: *In re Summit Metals, Inc.*, 379 B.R. 40 (Bankr. D. Del. 2007) (indemnification claim under a corporation's by-laws by an officer post-merger); *In re ANC Rental Corp., Inc.*, 341 B.R. 178 (Bankr. D. Del. 2006) (indemnification claim under a car rental agreement); *In re G-I Holdings, Inc.*, 308 B.R. 196 (Bankr. D. N.J. 2004) (indemnification claim under clean-up agreement); *In re Pinnacle Brands, Inc.*, 259 B.R. 46 (Bankr. D. Del. 2001) (indemnification claim under an asset purchase agreement); *In re Mid-American Waste Systems*, 228 B.R. 816 (Bankr. D. Del. 1999) (indemnification claim under certificate of incorporation); *In re Penn. Truck Lines, Inc.*, 189 B.R. 331 (indemnification claim under equipment maintenance and service agreement); *Reading Co. v. City of Philadelphia*, 155 B.R. 890 (E.D. Pa. 1993) (determining liability under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 in indemnification claim by a city against railroad under railroad's pre-petition lease of railcars).

*Montgomery Ward*, 268 F.3d at 212 ("we do not find our decision in *In re Columbia Gas Transmission Corp.*, 37 F.3d 982 (3d Cir. 1994), to be helpful in resolving the issue before us. As *Montgomery Ward* stresses, we there observed that a tax liability is generally 'incurred on the date it accrues, not on the date of the assessment or date on which it is payable.' *Id.* at 985. Columbia Gas did not involve a lease, however, and, accordingly, did not call upon us to interpret § 365(d)(3)").

Moreover, the strictures of the analyses by the Third Circuit Court of Appeals are not inapplicable merely because this question has not yet been posed. The issue is one of first impression, and the Court is both guided and constrained by the holdings of *Montgomery Ward* where the Court of Appeals determined that such obligations in nonresidential real property leases fall under section 365(d)(3) of the Code.[34]

The Debtors further argue that even if *Montgomery Ward's* applies and the Indemnification Obligations Claim arose post-petition, WM Inland cannot meet its burden under section 503(b)(1) of the Bankruptcy Code. Section 503 of the Code dictates that the Court may only allow administrative expenses that are "actual, necessary costs and expenses of preserving the estate . . ." It further sets forth a two-part test of whether a claim is entitled to administrative priority: (1) the expense must have arisen from a post-petition transaction between WM Inland and the Debtors, and (2) the transaction must have substantially benefitted the Debtors. *See, e.g.*, *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 51 (Bankr. D. Del. 2001); *In re Mid-American Waste Sys.*, 228 B.R. at 281. The Debtors argue that (1) the only transaction between WM Inland and the Debtors was entering into the Lease pre-petition, and (2) the Indemnification Obligations Claim does not benefit the estate.

Again, the Court disagrees. WM Inland's Indemnification Obligations Claim is based on the

---

[34] The Court is bound by the Third Circuit's interpretation of the relevant law. *See Jones v. Mellon Bank, N.A. (In re Jones)*, 183 B.R. 93, 96 (Bankr. W.D. Pa. 1995).

14

Debtors' post-petition obligations under the Lease and section 365(d)(3). Section 365(d)(3) of the Code requires the Debtors to perform all obligations under the Lease "notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3). "The provision 'notwithstanding section 503(b)(1), at the end of section 365(d)(3) means that aside from administrative expenses provided for in § 503(b)(1), § 365(d)(3) creates a new and different obligation - one that does not necessarily rest on the administrative expense concept." *In re Goody's Family Clothing, Inc.*, 401 B.R. 656, 667 (D. Del. 2009) *aff'd sub nom. In re Goody's Family Clothing, Inc.*, 610 F.3d 812 (3d Cir. 2010) ("*Goody's*"). The phrase operates as a "carve-out" *exempting* these expenses from "the usual burdens and procedures." *Id.* Therefore, because the Indemnification Obligations Claim stems from post-petition obligations under section 365(d)(3), section 503(d)(1) is inapplicable.

The Debtors further assert that when WM Inland settled with Fisher, it stood in Fisher's shoes as an unsecured creditor of the Debtors. They contend that elevating WM Inland's claim to administrative status "simply by conspiring with a third-party plaintiff" would encourage a wait-and-see hedging of bets regarding an anticipated bankruptcy.[35] The Court does not agree with the Debtors' suggestion that applying the section 503(d)(1) exemption set forth in *Goody's* creates bad public policy. This is not gamesmanship among pre-petition unsecured creditors; rather, this is an obligation under a nonresidential real property lease that arose *post-petition* and *pre-rejection*. The Indemnification Obligations Claim arising from the Lease fits squarely into section 365(d)(3) and the *Montgomery Ward* rationale.

Finally, the Court is not persuaded by the Debtors' equitable argument that WM Inland is receiving a windfall, namely the renovated Premises, without payment. The Debtors did not meet

---

[35] (Doc. No. 33, ¶ 11).

15

the agreed-to conditions in the Lease requiring WM Inland to purchase the building improvements from Mervyn's.

The Debtors are liable for the Indemnification Obligations Claim on an administrative basis under section 365(d)(3) and the Lease, as the obligation to indemnify arose after the Petition Date and before the Debtors rejected Lease. WM Inland's Summary Judgment Motion is therefore GRANTED; and the Debtors' Cross-Motion for Summary Judgment is DENIED.

Dated: January 8, 2013

*[signature]*

KEVIN GROSS, U.S.B.J.